**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

_____X
In re:                              :
                                    :
HC WALDEN PROPERTIES, L.L.C.,       :     Chapter 11
                                    :     Case No. 10-52106
       Debtor.                      :
_____X

*Appearances*:

Laurence May, Esq.                       :     Counsel for the Debtor
Cole, Schotz, Meisel, Forman & Leonard   :
900 Third Avenue, 16th Floor             :
New York, NY  10022                      :

Thomas A. Gugliotti, Esq.                :     Counsel for Secured Creditor
Updike, Kelly & Spellacy                 :     Bank of America, N.A.
100 Pearl Street                         :
P.O. Box 231277                          :
Hartford, CT  06123                      :

**MEMORANDUM OF DECISION AND ORDER ON
DEBTOR'S SURCHARGE MOTION**

Chapter 11 debtor, HC Walden Properties, L.L.C. ("Walden"), seeks to surcharge the collateral of Bank of America, N.A. ("BOA") for costs, fees, and expenses allegedly incurred with respect to the maintenance, preservation, and sale of some of that collateral. (*See* ECF No. 94; "Surcharge Motion".) BOA objects. For the reasons stated below, the motion is denied.

**Background**

SageCrest II, LLC, was a specialty lending hedge fund and one of a group of 27 related entities of which eight filed chapter 11 cases in this court. *See In re SageCrest II, LLC*, No. 08-50754, 2010 WL 5372426, *1 n.1, App. A, slip op. (Bankr. D. Conn. Dec. 22, 2010). Walden is a wholly-owned subsidiary of SageCrest Chicago, LLC, which in turn is a wholly-owned subsidiary of SageCrest II, LLC. Walden's assets

consist primarily of 65 residential units in a 219-unit condominium complex located in Schaumberg, Illinois ("Property"). Walden's primary business is selling those units. It also rents units that are not sold to defray expenses. (*See* ECF No. 43 at 2.) The Property and the rents are collateral securing BOA's approximate $4.45 million loan ("Loan")[1] to Walden.

In early 2009, Walden defaulted on the Loan. On October 21, 2009, BOA commenced foreclosure proceedings in an Illinois state court, which appointed a receiver to collect the rents generated from the Property while the foreclosure action was pending.

On September 1, 2010, Walden commenced this chapter 11 case, which stayed the foreclosure action. *See* Bankruptcy Code § 362. The receiver was discharged, and the rent funds were turned over to Walden. (*See* ECF No. 43 at 7.) Walden also sought and received court approval to sell two residential units in its "ordinary course of business" (*See* ECF No. 58.)

During the first several months of this case, Walden sough and, with the consent of BOA, obtained cash collateral orders. Each of those orders stated that "to the extent that the adequate protection provided for herein fails to protect [BOA] against any post-petition diminution in value of the collateral, [BOA] hereby is granted a super-priority administrative expense claim as provided for in Section 507(b) of the Bankruptcy Code." (*See* ECF No. 33 at 4; ECF No. 64 at 5; ECF No. 69 at 5; ECF No.77 at 5.) On February 22, 2011, Walden stipulated to relief from the automatic stay (*see* ECF. No. 86), which allowed BOA to continue its foreclosure action.

---

[1] The Loan was originally for $23 million, with the outstanding balance being approximately $4.45 million at the commencement of this case.

On May 16, 2011, Walden filed this Surcharge Motion for an order authorizing it to recover $167,622.38 from BOA's collateral.  That amount comprises:

| | |
|---|---|
| $ 37,598.00 | in fees for general services related to the sale of two units; |
| $ 14,900.00 | in fees related to the cash collateral orders; |
| $ 7,012.50 | in fees related to preparation of the Surcharge Motion; |
| $ 3,657.88 | in legal costs and expenses; and |
| $104,454.00 | for monies expended for home owner association assessments, utilities, and insurance payments. |

In opposition, BOA argues that it has not benefitted primarily or directly from Walden's actions.  To the contrary, the "primary effect of the Case on . . . [BOA] was to delay the Foreclosure by five and a half months, during which time both interest and property taxes were accruing [which] . . . require[d] . . . [BOA] to pay fees to both Chicago and Connecticut counsel to represent it in the bankruptcy proceeding." (BOA's Opp'n to Surcharge Motion at 2, ¶1, ECF No. 99.)

## Discussion

The predicate for this controversy is § 506(c) of the Bankruptcy Code:

> The [debtor-in-possession, *i.e.*, Walden] may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property *to the extent of any benefit to the holder of such claim* . . . .

11 U.S.C. § 506(c) (emphasis added).  The Second Circuit has held that in order to recover costs and expenses, "any fees payable from [a secured creditor's] collateral must be for services which were for the benefit of that [secured creditor] rather than the debtor or other creditors." *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 75 (2d Cir. 1984) ("*Flagstaff I*").  The Second Circuit refined that holding in a subsequent *Flagstaff* decision:  "The debtor in possession also must show that its funds were expended *primarily* for the benefit of the creditor and that the creditor *directly benefitted* from the expenditure." *General Elec. Credit Corp. v. Peltz*, 762 F.2d 10, 12 (2d Cir. 1985) ("*Flagstaff II*") (emphasis added);

*see also United Steel Workers of Am., AFL-CIO v. Jones & Lamson Machine Co. (In re Jones & Lamson Machine Co.)*, 102 B.R. 12, 13 (Bankr. D. Conn. 1989) (surcharging permitted only with secured creditor's consent or showing that expenses were primarily for secured creditor's benefit). The party seeking to surcharge bears the burden of proving the necessity of the expense, the reasonableness of the expense, and the primarily benefit of the expense to the affected secured creditor. *Flagstaff I*, 739 F.2d at 77.

Walden generally appears to argue that the itemized costs and expenses buttressed its "hope of effectuating [its] rehabilitation and . . . optimism that this could be accomplished . . . ." *Flagstaff I*, 739 F.2d at 76. There is not a scintilla of evidence to support any such claim. Rather, the evidence merely suggested an "incidental" benefit to BOA. *Id.* The Second Circuit has stated that "[s]uch benefits as might be said to have accrued to [the secured creditor] from the attempt to reorganize were incidental to the reorganization and did not fall within the intended scope of section 506(c)." *Id.*

*A*s to the items specifically claimed, *see supra* p. 3,[2] a review of the record fails to disclose any persuasive evidence that Walden satisfied the definitions mandated by the *Flagstaff* decisions, *i.e.*, that any of those items were expended *primarily* and *directly* for the benefit of BOA. *See Flagstaff I*, 739 F.2d at 77; *Flagstaff II*, 762 F.2d at 12.

For example, as to the $37,598 fees for general services relating to the sale of the two units, there was no evidence that the sale of those units had anything to do with BOA. In fact, BOA might have been better off if the units had not been sold by Walden but, rather, by BOA selling them through the state court foreclosure. Moreover, included within the $37,598 amount are charges relating to the preparation of Walden's schedules and statement of financial affairs. Those are the types of general administrative expenses which are the responsibility of Walden's bankruptcy estate.

---

[2] Walden has withdrawn its request to surcharge BOA $7,012.50 for fees relating to this Surcharge Motion. (*See* ECF No. 115 at 4 n.1.) That decision was prudent as it is preposterous to expect that Walden could establish that this Surcharge Motion was primarily and directly for the benefit of BOA.

See *Flagstaff I*, 739 F.2d at 76; *see also In re Perret,* 63 B.R. 978 (Bankr. N.D.N.Y. 1986).

As to the $14,900 for the cash collateral orders: Although there was some benefit to BOA in the sense that they were granted replacement liens and an assurance of super-priority status, the claim that those orders were *primarily* for BOA's benefit is a *non-sequitur*. The use of BOA's cash collateral was sought by Walden for its benefit. Similarly, other than evidence of invoices identifying $3,657.88 in legal costs and expenses, nothing else was offered to prove that those costs and expenses in any way benefitted BOA.

Finally, as to the $104,454.00 for home owner association assessments, utilities, and insurance payments, it would be inequitable to surcharge BOA for those expenses since its cash collateral has already been used to pay them. But, more to the point, although BOA might have indirectly benefitted from those expenditures, it is beyond doubt that Walden, and not BOA, was the primary and direct beneficiary. Simply put, Walden did not spend money on home owner assessments, utilities, and insurance for the primary and direct benefit of BOA, but rather for itself.

## Conclusion

Accordingly, finding Walden has failed to meet its burden of proof, the Surcharge Motion is denied, and IT IS SO ORDERED.

Dated this 9th day of August 2012 at Bridgeport, Connecticut.

BY:

Alan H. S. Shiff
United States Bankruptcy Judge